1979 Watson v. Bureau of Prisoners Good morning. May it please the court. The first issue I want to address is the jurisdictional issue that was raised by the Bureau of Prisons in this case. When we decided to file an appeal, we decided to come before this court even though it meant waiving the discrimination claims. But then why did you brief nothing but discrimination claims in your appeal? Because we wanted the court to have the background of all the allegations that were made before the arbitrator. If you file the 15C and you want to waive all your discrimination claims, so you're saying that things like retaliation are not on the table, that discrimination is not on the table, so what is the substantive basis for your appeal? My appeal is just insufficient cost. It's what? when the agency terminated Mr. Watson. We presented all the discrimination journey that Mr. Watson went through to show that even when the agency expressed in the termination letter that this position that Mr. Watson was supposed to be working on... In fact, you're bound by your blue brief. Turn to page 17 of your blue brief where you lay out in your penultimate page the relief that you seek this court grant you. You start at the top with the word wherefore in bold. Yes. You then say the union has presented beyond a preponderance of the evidence that the grievance was wrongfully terminated in violation of the ADA and Rehabilitation Act. Then the next sentence, which starts the next paragraph, that the agency engaged in a prima facie case of disability discrimination, that the grievant was denied a reasonable accommodation, etc., etc. You have the word discriminations throughout your brief and in your prayer for relief from this court. Yes. That is your argument to this court. Right.  That is not just in the background section. It's throughout your entire brief, including in your prayer for relief. That means we don't have jurisdiction over your case. If you continue reading in that prayer of release, we also included that the agency violated the just cause clause of the contract. Yeah, you think they did a lot of things wrong. And if you hadn't alleged discrimination, we could get to those other things. But you did throughout the brief. I think the problem is that when you say there wasn't just cause, you're saying there wasn't just cause because there was a violation of the Rehabilitation Act, which sounds very much like asking us to decide the Rehabilitation Act. I understand that. It's a mixed question. And the reason why we didn't file it with the MSPB is because the MSPB has only one member, and we wanted to solve this situation, and that's why we presented it. Couldn't you have gone to the district court? We have had cases with the district court. I am not admitted in the court of West Virginia. And I was handling a case recently in West Virginia, and it was extremely costly, and we didn't have the funds to assume the legal representation of this other case. Mr. Watson spent close to $35,000 in his EEO case before I assumed legal representation. And I have a lot of sympathy for those points. I understand, but I'm answering your question, Your Honor. But your whole basis for your argument is that their explanation for why they terminated him was a pretext because what they really were doing was discriminating against him. That is a claim over which we have no jurisdiction, even if you tie the two together. Mixed questions. Don't go to us. You have to go to the district court, as much as you may not like the district court. No, no, it's not that I don't like the district court. It's just that the client did not have the funds in order to fulfill the needs of filing the case. But in any event, the reason why we present the just and sufficient cause is because in this case, the agency in its termination letter said that the position that Mr. Watson was supposed to be occupying in the factory was critical for the operation of the institution. They offered him a different position, one he said before that he wanted and he didn't take it, right? I mean, that's what they said. We tried to accommodate him. He wouldn't take it. Right. But I want to address your attention to a position that we presented in the arbitration during the case, and it was the cook supervisor position in August 2013. That position was requested by Mr. Watson, and the agency never acted upon that position. In the hearing, the warden testified that he didn't choose Mr. Watson even though he was BQ'd because he wanted the person that was most qualified, even when Mr. Watson made the BQ list. Now, I bring that to your attention because the arbitrator, in his 125-page award, went through each and every e-mail document, et cetera, except the request of reasonable accommodation that Mr. Watson made in August 2013. And in August 2013, the agency had the opportunity to reassign Mr. Watson within that institution. We are claiming in our brief that he was in retaliation and they didn't follow the Rehabilitation Act. But when we argue the just cause, we don't know what really went on on the warden's mind because, of course, no one is going to admit he's bickering too much or I don't like his temper or I don't want him in this institution anymore. The truth of the matter is that they didn't want him in the institution anymore because the same position that the warden had in Gilmer when Mr. Watson worked in August 2013 that the warden didn't give him was the same position that they offered him later in April 2014. So it is obvious that the agency wanted him outside of the FCI Gilmer. Why? I don't know the answer to that question. I could argue that it was his bickering. I could argue that his temper. I could argue that they didn't want to continue with the disciplinary procedures that they were having with him within FCI Gilmer. Maybe they thought that they were going to terminate him anyway based on the other disciplinary measures and they took that as the opportunity to terminate him. But the truth of the matter is that the same position that Mr. Watson was offered 90 miles away in Hazleton was the same position that a year back in August 2013, the position that he applied for and he was supposed to get and didn't get because Warden Purdue selected another employee. When we go through the award in this case, I have reviewed it many times and there is not a single reference by the arbitrator of that August 2013 position. And of course he couldn't make reference to that position because in page 118 of his award, he admits that if Mr. Watson was best qualified then the agency had to give him that position. And when I noticed that there was no reference whatsoever to the August 2013 Cook Supervisor position in Gilmer, then I realized that he couldn't make reference to that position because it would defeat his argument as to why there was no kind of... either a pure discrimination claim or a mixed case. Do you want us to transfer it or do you want us to dismiss it? Well, if you understand that, I would appreciate it that you transfer it. To the district court in West Virginia? Yes. We will do our best to... We need to, you know, we followed already the PHV procedure. I have been paying the dues every year because in West Virginia you have to pay the local dues in order to be able to litigate in federal court. And of course these are cases that are on a contingency basis and it's not paid by the employee. And that's, you know, the reason why we chose this firm because Mr. Robbins is the only member of the MSPB and this employee has been dealing with this even before because it's our argument that even before 2012 when he made the written Now that's a real problem with the MSPB. We're waiting for a thousand cases from there once they ever get there. I understand that. I was in the judicial conference and I was amazed at the amount of cases that Your Honor mentioned as to how many cases that they have in backlog. But that was really the reason we wanted to have an opportunity to bring the case before this court and understanding that we... And the client signed the form. I advised him of what it was that we were doing and the reason why we were doing it. The problem is not just that the MSPB doesn't have a form. It's that this statutory scheme is complicated and doesn't provide a simple remedy that would be affordable for people. The desire to give the employee all sorts of opportunities has perhaps made things more difficult rather than easy. Yes. I used to be an assistant U.S. attorney in Puerto Rico years ago. And as an assistant U.S. attorney, I had all the statutes and regulations to be able to request a dismissal because I know how intricate the procedures are. And so that's why this is my first time before this court. For clarification, if we transfer it, there's more than one district court in West Virginia. Yeah, we were in the northern. Yes, the FCI Gilmer is in the northern. But the other two arguments are really arguments that are procedural in nature. We just included them because it was really surprising. You may remember that this court at one point thought that a 15C would allow us to separate out the discrimination issues from the other issues and just handle the one. And the Supreme Court disagreed with us. I understand that. And I understand that there are cases in which you can have the discretion. But I understand that in this case, I was trying to really get closure with the just cause argument because it was both alleging the grievance and it was also addressed in the award by the arbitrator. And therefore, we wanted to bring that to the court's attention, even though we do understand that the main gift could be under the Rehabilitation Act. But we also have under the contract the just cause violation. Okay. That will be all. If you have any questions. Thank you. Thank you. Do we have the option to transfer it if we conclude that we don't have jurisdiction? This court could transfer the case to the District of West Virginia. There are some timeliness concerns with respect to that because this appeal was taken more than 30 days after the arbitration decision. I believe the arbitration decision was dated March 9th. And I think the notice of appeal was March 6th. And the notice of appeal was April 25th. Oh, my God. So we send them to the district court and it costs a ton of money. And then you argue that it's untimely and so the district court has to throw it out. That is a concern. Now, we can't, of course, here speak to what the district court would say about the timeliness concerns and whether or not Mr. Watson could establish good cause to whether that could be told and whether Mr. Watson could establish good cause. Back up a moment. As I understand it, there are different time limits for going to district court and for going to this court. Am I correct about that? Yes, Your Honor. It's 30 days for the district court and 60 for this court. Is that what it is? Yes, Your Honor. And also I should. Just so we know what the facts are. She filed a petition for review with this court within the 60-day limit but not within the 30-day limit. Is that what you're saying? That is my understanding of what happened, Your Honor. Additionally. How many days did you say it was? 31 or 32? I believe it was. No, no, it's longer than that. It was March 6th and then I think it was April 25th. So that would be the court attesting my math on the fly. Got it. I can do that. It would be more than 30 days. You know, the statutory scheme is complex. Section 7121D would have permitted Mr. Watson to appeal the arbitration decision to the board, you know, pursuant to… To what board? To the Merit Systems Protection Board. And we understand that there is a concern right now with no quorum. You know, there is one case that we cited and it is an unreported case from the District of Maryland, which is the Moreno case. And we apologize. There was a typographical error. That case was not from the Fourth Circuit. It was from the District of Maryland. But that case laid out this process. And some courts have found that a failure to file before the board does constitute a failure to exhaust administrative remedy. So we say this just to explain where we are at. We would not have necessarily… So there are two arguments that you could make if we transferred it to district court. One, that they hadn't exhausted their administrative remedy, so they couldn't go to the district court. And second, that the filing was on time. Yes, Your Honor. We don't… We, of course, can't speak to what the court would ultimately decide and we would not necessarily… So they would have had to file… You think they should have filed before the board and then sit there and wait for years until the board could possibly have people that can act on it. Well, it potentially… The District of West Virginia could decide that. We can't say exactly whether or not… But you concede that had they filed before the board, they'd be still sitting there because there's no board to act. That is right, Your Honor. That is right. That is right. Unfortunately, as we explained in our brief, Mr. Wasson's appeal is a claim for failure to accommodate to disability in violation of the Rehabilitation Act. And he also sets forth two defenses to his termination. One, that the agency failed to follow its policies with respect to reasonable accommodation in violation of the Rehab Act and that they retaliated against him for prior protected activity also in violation of the Rehab Act. All of those claims and defenses are, of course, discrimination claims that cannot be considered by this court. Are there cases dealing with the time limit issue? Has that issue been decided? If there's a timely petition for review in this court and the case is transferred, are there cases saying, well, you can't proceed in the district court because you didn't seek review within 30 days? The Supreme Court in a very old case, and the name escapes me, Your Honor, at this moment, did say that discrimination cases implied that they could be equitably told. The deadline could be equitably told in discrimination cases. We are not aware of a case in the Fourth Circuit that has definitively said that discrimination cases that come to the board could be, the deadline would be told. There is a question, of course, if the deadline could be equitably told, if it's permissible to do so, would Mr. Watson establish good cause for the timeliness? And, of course, that would be a question for that court to decide and for Mr. Watson to show. If Mr. Watson had waived all of the... There is case law that says you don't have to exhaust administrative remedies if, generally, not necessarily in the MSPB context, but I'm familiar with a lot of case law that says even an administrative exhaustion rule doesn't apply if you can establish that it would have been completely futile to attempt to do so. Right. So there are arguments Mr. Watson would have. We are simply just laying out our understanding of the timeliness concerns and the other concerns that may arise if the case were to be transferred. If Mr. Watson had waived all of his discrimination claims and defenses, there is substantial evidence in the record to support Mr. Watson's termination for medical inability to perform, and that termination was reasonable. Okay. Any further questions? All right. Thank you. Okay. Thank you, Ms. Potter. Ms. Mendoza, do you have anything further? No. Thank you so much for your attention. Okay. Thank you. Thank both counsel. The case is submitted.